# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

U.S. National Bank Association,   :
as Trustee, as successor in interest to   :
Wachovia Bank, N.A. as trustee for   :
the Bond Insurer and not in its   :
individual capacity, by and through its   :
servicing agent, Linebarger Goggan   :
Blair and Sampson, LLP   :
  : No.  2237 C.D. 2014
v.   :
  : Argued:  October 5, 2015
United Hands Community Land Trust,   :
A Pa Non-Profit Corporation,   :
Delaware Valley Community   :
Reinvestment Fund and Commonwealth   :
of Pennsylvania Bureau of Compliance/   :
Clearance Support   :
  :
Appeal of:  Wesley Cascone   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE McCULLOUGH                            FILED:  December 15, 2015

Wesley Cascone (Cascone) appeals from the October 29, 2014 order of the Court of Common Pleas of Philadelphia County (trial court) denying his petition to set aside a sheriff's sale.  The predominate issue in this case is whether the petition for a sheriff's sale and rule to show cause were posted on the property in accordance with statutory requirements.  After review of Cascone's brief, the record, and the trial court's opinion, we reverse and remand.

## Background

The facts and procedural history of this case may be summarized as follows.

On May 31, 2013, U.S. Bank National Association, as trustee and successor in interest to various private and public entities (Trustee), filed a Petition for Rule to Show Cause why Property Should not be Sold Free and Clear of all Liens and Encumbrances (the Petition). According to Trustee, by Special Ordinance No. 970168 of June 1997, the City of Philadelphia and the School District of Philadelphia sold a portfolio of delinquent real estate tax liens to the Philadelphia Authority for Industrial Development (PAID), empowering the latter to recover delinquent taxes through lawful means. Thereafter, PAID sold the portfolio to Trustee, and Trustee received authorization to recover upon the tax liens by all lawful means, including the initiation and prosecution of foreclosure actions. (Reproduced Record (R.R.) at 10a.)

In the Petition, Trustee averred that there were real estate taxes in the amount of $1,314.44 owing on the premises at 2021 East Susquehanna Avenue, Philadelphia (the Property), and sought to sell the Property pursuant to what is commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA).[1] At the time the Petition was filed, the record owner of the Property was United Hands Community Land Trust (United Hands), as reflected by deed dated December 15, 1989. (Trial court op. at 1.)

Trustee filed affidavits of service, indicating that it posted the Property with the Petition on September 3, 2013, and served United Hands by certified and regular mail. On October 11, 2013, the trial court granted Trustee's Petition, entered

_____

[1] Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§7101-7505.

judgment in favor of Trustee in the amount of $1,595.48, and permitted the Property to be sold at a sheriff's sale. After Trustee filed an affidavit noting that service of the notice of sale was made by first-class regular mail, the Property was sold, on February 20, 2014, at a sheriff's sale to VRTX Company for $49,000.00. *Id.* at 2.

On July 18, 2014, Cascone filed a petition to set aside the sheriff's sale, averring that he had resided next door to the Property since March 2007 and owns six other lots and buildings on the block. Cascone contended that on August 19, 2013, (approximately two and one-half months after the Petition was filed, but prior to service of the notice of sale), he filed an action to quiet title to the Property against United Hands based upon a theory of adverse possession. Cascone further stated that he filed a *lis pendens* along with his complaint to quiet title. *Id.* at 2-3.

In addition, Cascone asserted that on May 30, 2014, (approximately three months after the Property was sold at the sheriff's sale), a different trial judge issued him a deed granting him title to the Property. Cascone averred that he recorded the deed on June 3, 2014. In his petition, Cascone contended that he never received notice that the Property would be sold at a sheriff's sale. *Id.* at 2-3.

Trustee filed an answer to the petition to set aside, asserting that Cascone was not served with the Petition because he did not properly register or record his interest and, thus, did not have standing to contest the sale. Trustee also contended that service had been made on all the individuals who had registered or recorded interests in the Property. *Id.* at 3.

On October 28, 2014, the trial court convened a hearing and heard argument and evidence on the merits of the case. Cascone argued that the Property was not posted and that he did not receive notice of the sale. In response, Trustee argued that it complied with the notice requirements of the MCTLA, the Property was

properly posted, and all the individuals entitled to notice received notice. Trustee also asserted that Cascone's *lis pendens* had not been indexed correctly or properly registered or recorded and Cascone did not receive title to the Property until after the sheriff's sale; consequently, he had no standing to contest the sale. The parties then called witnesses in support of their positions. *Id.*

Keith Muhammed testified that he is a process server who posted the Property with the Petition on September 3, 2013, at approximately 11:39 a.m. "Muhammed could not recall exactly where he posted the Property, but stated that he had signed the affidavit truthfully and accurately. Muhammed testified that when a property is fenced, or covered in debris, he finds 'the best place' on the fence to affix the packet, and that he uses duct tape." *Id.* at 4.

Joseph Giglio testified that he has been a title clerk for over twenty years. He testified that the docket in Cascone's quiet title action did not have a line of information stating that a *lis pendens* had been filed. *Id.*

Cascone testified that he lives at 2020 East Susquehanna Avenue, and that he recalled September 3, 2013, because his son moved in with him on that day. Cascone stated that from 9:30 a.m. until approximately 11:30 a.m., he and his son unpacked the car. Cascone said that, during this time, he did not observe anyone posting the Property or see a posting on the Property. *Id.*

Kristen Flanagan, Cascone's girlfriend, testified that she lived with Cascone in September of 2013. Flanagan testified that on September 3, 2013, she helped Cascone's son move into the house after Cascone had left for work in the morning. She said that she did not see the Property posted on that day or hear any noise from her dogs, who ran in the Property's vacant lot. *Id.*

4

Evelyn Velez testified that she resides at 2031 East Susquehanna Avenue. Velez stated that she feeds stray cats on the block at least four times a day, at 7:30 a.m., 12:30 p.m., 3:00 p.m., and occasionally at 6:00 p.m. She did not recall seeing anything posted on the Property on September 3, 2013. *Id.*

By order dated October 29, 2014, the trial court denied Cascone's petition to set aside. Cascone filed a motion for reconsideration on November 10, 2014, contending that after the October 28, 2014 hearing, his counsel contacted the prothonotary's office to determine why the *lis pendens* did not appear of record. Cascone's counsel stated that the *lis pendens* had been filed correctly, but the prothonotary incorrectly processed it for filing and indexing. On November 13, 2014, the trial court denied Cascone's motion for reconsideration and, on November 26, Cascone filed a timely appeal to this Court. *Id.* at 5.

In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that Cascone did not have standing to contest the sale. Referencing section 39.1 of the MCTLA, 53 P.S. §7193.1,[2] the trial court first found that Cascone did not register his interest in the Property and determined that even if the *lis pendens* had been properly indexed, it would not suffice to give notice to third-parties like Trustee. The trial court further found that Trustee complied with the notice requirements of section 39.2 of the MCTLA, 53 P.S. §7193.2,[3] finding, *inter alia*, that Muhammed testified that he posted the Property with the Petition on September 3, 2013, at 11:39 a.m., and the affidavit of service confirmed the posting. (Trial court op. at 6-9).[4]

---

[2] Added by the Act of December 14, 1992, P.L. 850, 53 P.S. §7193.1.

[3] Added by the Act of December 14, 1992, P.L. 859, 53 P.S. §7193.2.

[4] The trial court also stated that it could not determine whether Cascone's petition to set aside was filed timely, because the evidence was unclear as to when, or if, the sheriff's deed was **(Footnote continued on next page…)**

5

**(continued…)**

acknowledged. The trial court noted that the petitions demonstrated that VRTX Company "settled" with the sheriff's department on March 20, 2014, and Cascone filed his petition to set aside on July 18, 2014. (Trial court op. at 6.)

The parties do not discuss this issue in their submissions to the Court, and it may be a question of fact for the trial court to resolve on remand. Nonetheless, without ruling on the matter, we note that it appears Cascone's petition was filed timely.

Pursuant to section 31.2(b) of the MCTLA, the deed cannot be acknowledged and delivered to a purchaser until at least thirty days after the purchaser pays the full purchase price for the property. Section 31.2(b) of the MCTLA, added by the Act of March 15, 1956, P.L. (1955) 1274, 53 P.S. §7283(b) ("The deed to the purchaser shall be executed, acknowledged and delivered as in other real estate sales by the sheriff. Deeds for property exposed for any sale under this section shall not be executed, acknowledged and delivered any sooner than thirty days nor later than one hundred and twenty days after the purchaser pays the balance due to the sheriff for any sale held under this section."). Under section 39.3 of the MCTLA, a party wishing to set aside a sheriff's sale must file a petition within three months of the date of the acknowledgment. *See* section 39.3 of the MCTLA, added by the Act of December 14, 1992, P.L. 859, 53 P.S. §7193.3 ("All parties wishing to contest the validity of any sale conducted pursuant to section 31.2 of this act, including the sufficiency of any notice, and any party claiming to have an interest in the premises which was not discharged by the sale must file a petition seeking to overturn the sale or to establish the interest within three months of the acknowledgment of the deed to the premises by the sheriff.").

Therefore, a party will have, at the very least, four months from the date the full purchase price is paid to file a timely petition to set aside (thirty days for the acknowledgment to occur plus three months from the date of the acknowledgment). Because VRTX Company paid the full purchase price on March 20, 2014, and Cascone filed his petition on July 18, 2014, Cascone's petition appears to have been filed timely.

6

**Discussion**

**I. Whether the trial court erred in concluding that Cascone lacked standing?**

On appeal to this Court, Cascone argues that the trial court erred in concluding that he lacked standing to file a petition to set aside the sheriff's sale. Cascone contends that he possesses standing because: the evidence did not establish that the Property was properly posted; he obtained title to the Property and recorded the deed; and he filed a *lis pendens* in the quiet title action.

**A. Posting the Petition on the Property's "most public part"**

Pursuant to section 39.2(a)(1) of the MCTLA, notice must be effectuated, among other ways, "[b]y posting a true and correct copy of the petition and rule on the most public part of the property[.]" 53 P.S. §7193.2(a)(1). Cascone first contends that Muhammad's testimony regarding the posting of the Property was inadequate to support a finding that the Property was properly posted. More specifically, Cascone argues that Muhammad, even after visiting the Property prior to the hearing, testified that he could not recall where he posted the Petition on the Property. Cascone also points to testimony from his witnesses who stated that they never saw the Property posted with the Petition. For these reasons, Cascone contends that "there is no rational support in the record to find that service was proper," (Cascone's brief at 13), and, therefore, he has standing to set aside the sheriff's sale.

In response, Trustee argues that service was properly made on the Property and to all those individuals who had a registered or recorded interest in the Property. On this basis, Trustee contends that Cascone does not possess standing to file his petition.

7

"This Court's review in tax sale cases is whether the common pleas court abused its discretion, erred as a matter of law or rendered a decision that was unsupported by substantial evidence." *In re Consolidated Return of Real Estate Tax Sale*, 74 A.3d 1089, 1092 n.6 (Pa. Cmwlth. 2013). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Radhames v. Tax Review Board*, 994 A.2d 1170, 1177 (Pa. Cmwlth. 2010). However, evidence proving "suspicion and conjecture" does not constitute substantial evidence as a matter of law. *Barnes v. Department of Justice and the Commissioner of State Police*, 452 A.2d 593, 595 (Pa. Cmwlth. 1982). Stated differently, "[s]ubstantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." *Shive v. Bellefonte Area Board of School Directors*, 317 A.2d 311, 313 (Pa. Cmwlth. 1974).

In general, a petition to set aside a sheriff sale is governed by the Pennsylvania Rules of Civil Procedure which provide, in pertinent part, that "the court, may upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." Pa.R.C.P. No. 3132. *See also Allegheny County v. Golf Resort, Inc.*, 974 A.2d 1242, 1245 (Pa. Cmwlth. 2009). By its very nature, a petition to set aside a sheriff sale is an equitable proceeding, governed by equitable principles, and appellate review of equitable matters is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Golf Resort, Inc.*, 974 A.2d at 1245. Notably, "[t]he purpose of sheriff's sales under the [MCTLA] . . . is not to strip the owner of his or her property but to collect municipal claims." *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013).

8

Section 39.1 of the MCTLA requires an owner of real property in the City of Philadelphia (City) having a lien, claim, or interest to "register a notice of interest with the department of [the City] responsible for collection of tax and municipal claims stating his name, residence and mailing address and a description of the real property in which the person has an interest." 53 P.S. §7193.1. Sections 39.2(a) and (b) of the MCTLA, governing notice and standing, state as follows:

(a) In cities of the first class, notice of a rule to show cause why a property should not be sold free and clear of all encumbrances issued by a court pursuant to a petition filed by a claimant under section 31.2 of this act shall be served by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind as follows:

(1) **By posting a true and correct copy of the petition and rule on the most public part of the property**;

(2) By mailing first class mail to the address registered by any interested party pursuant to section 39.1 of this act a true and correct copy of the petition and rule; and

(3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to section 39.1 of this act, the city shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

\* \* \*

(b) **No party** whose interest did not appear on a title search, title insurance policy or tax information certificate or who failed to accurately register his interest and address pursuant to section 39.1 of this act **shall have standing to complain of improper notice if the city shall have complied with subsection (a) of this section.** This

9

provision shall not apply if the mortgage or interest was otherwise properly recorded in the Office of the Recorder of Deeds and the document contains a current address sufficient to satisfy the notice requirements of this section. Notwithstanding any other requirement set forth in this act or any other law to the contrary, the notice required by subsection (a) of this section shall constitute the only notice required before a court may enter a decree ordering a tax sale.

53 P.S. §7193.2(a) and (b) (emphasis added).

Pursuant to the plain language of sections 39.2(a) and (b) of the MCTLA, a party will not have standing to complain of improper notice if the City, or in this case, Trustee, abides by the requirements in section (a).

"Section 39.2 sets forth a specific timeline the City must follow such that the trial court could ensure that the property was posted in the appropriate manner and that all notices were sent to the proper parties, including notice of the decree directing that a tax sale will occur at a specified time, place and date." *City of Philadelphia v. Schaffer*, 974 A.2d 509, 512 (Pa. Cmwlth. 2009). Strict compliance with the service requirements is mandatory, and a trial court must make "an independent inquiry" to confirm that notice and service were effectuated in accordance with the MCTLA. *Manu*, 76 A.3d at 605-06. Traditionally, it is the City's burden, or in this case, Trustee's burden, to prove strict compliance with the requirements of the MCTLA. *Id.* at 604.[5]

---

[5] Further, we note that the burden of proof will usually fall on the party that has peculiar knowledge concerning the facts at issue. *See Barrett v. Otis Elevator Co.*, 246 A.2d 668, 673 & n.6 (Pa. 1968) ("If the existence or nonexistence of a fact can be demonstrated by one party to a controversy much more easily than by the other party, the burden of proof may be placed on that party who can discharge it most easily."). Surely, Trustee should shoulder the burden of proving that notice was properly posted because it was the party that posted the Petition on the Property.

10

Cascone asserts that he cannot be denied standing under section 39.2(b) of the MCTLA because Trustee did not strictly comply with section 39.2(a)(1)'s requirement that the Petition be posted "on the most public part of the property."  53 P.S. §7193.2(a)(1).

<u>Testimony</u>

At the hearing, Muhammed, who posted the Petition on the Property for Trustee, testified that he completed an affidavit shortly after posting and that the affidavit is "a correct and accurate reflection of what took place."  (R.R. at 79a-80a.) On the affidavit, Muhammed checked the box for "Property Posted" and wrote "9-3-13 11:34 am."  (R.R. at 23a.)  However, **Muhammed did not write where on the Property the Petition was posted**.  *See id.*

Moreover, Muhammed testified on direct examination as follows:

Q. And prior to attending court today, did you have an opportunity to see the property or visit the property?

A. Yes.

Q. And what do you recall about the property?

A. It's basically a property that's fenced in. It looks vacant. So I just drove by it to see if I can jog my memory as far as what took place.

The Court:  See if you could what?

The Witness: If I could recall the property.

BY [Trustee's attorney]:

**Q. Okay.  And do you recall, if you do, where you posted this property?**

11

**A. Not exactly, no.**

[Trustee's attorney]: I have no further questions at this time.

(R.R. at 80a) (emphasis supplied).

On cross-examination, the following exchange occurred:

Q. Okay. When you said you went by the property, when was that?

A. Today.

Q. Okay. And it didn't jog your memory at all?

A. Did it jog my memory?

Q. Yeah. I think that was the word you used.

A. Yes. As far as -- I just wanted to view the property so that when I came today I would have familiarity with the property.

Q. Right. Did it bring anything back to mind on this specific posting?

A. Back to mind? No.

Q. Okay. So you said you posted a packet of papers, is that right?

A. Yes.

Q. How did you post them?

A. My normal posting procedure, I take both ends, and depending on the property, I would – depending upon the property, I find some place that would be sufficient to hold the document, because it does have weight, and I post it.

12

**Q. So on this property, specifically, how did you post?**

**A. I can't say specifically.**

(R.R. at 82a-83a) (emphasis supplied).

Trustee then re-directed Muhammad:

Q. You indicated it was a fenced-in property and you also indicated how you normally post properties. In a property such as this, how do you normally post it?

\* \* \*

THE WITNESS: With a fence I normally would find -- there is a post that's clear. Like properties sometimes have debris and things on them, I find the best place possible that I could put the packet. I use duct tape normally and I would find the clearest portion of it [and would] most likely to [*sic*] put it on there, depending on what's on the property's face. On the fence I would try to get the post or the links if they are not covered.

(R.R. at 84a-85a.)

On a brief re-cross, Cascone asked Muhammad one question:

Q. You have no specific recollection what you did with regard to this property on September 3, 2013, correct?

**A. No, I couldn't tell you the specifics.**

(R.R. at 85a.)

Thus, it is clear from the testimony that Muhammad could not remember where he posted the Petition on the Property, even after driving by the Property to refresh his memory, nor does the affidavit state where the Petition was posted on the Property.

13

As an initial matter, we observe that when it comes to the location of posting, each case will be fact-specific, depending on the unique nature of the property and the particular placement of the notice on the property. *See Wiles v. Washington County Tax Claim Bureau*, 972 A.2d 24, 28 (Pa. Cmwlth. 2009) (discussing the posting requirements under the Real Estate Tax Sale Law[6]).

Here, Muhammad offered no testimony to establish where the Petition was placed on the Property, and thus his testimony could not establish that the Petition was placed on "the most public part of the [P]roperty." 53 P.S. §7193.2(a)(1). Although Muhammad testified that he "most likely" places a petition on a debris-covered, fenced-in property on the "clearest portion" of the fence, (R.R. at 85a), his testimony is not specific to the Property itself. Even if the trial court accepted Muhammad's testimony and credited it with the fullest extent of evidentiary weight, his testimony is nonetheless insufficient to sustain the inference that the Property was posted in accordance with section 39.2(a)(1) of the MCTLA. 53 P.S. §7193.2(a)(1). Quite simply, proof that Muhammad usually places a petition on the "clearest portion" of a fence does not tend to prove that the "clearest portion" of the Property's fence was the "most public part" of the Property for purposes of public inspection. *Id.* The two concepts ("clearest portion" and "most public part") have absolutely no probative correlation.

Indeed, the "clearest portion" of the Property's fence could very well have been facing an obscure and unused alley where members of the public would have had a slight chance of viewing the Petition. Further, Muhammad stated that he typically posts a petition "depending on what's on the property's face." (R.R. at 85a.)

---

[6] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§5860.101-5860.803.

14

This is entirely a subjective assessment, dependent upon a multitude of variables, and there is no evidence concerning what, if anything, was on face of the Property's fence. Without any evidence that the Property's fence was actually covered in debris or otherwise obstructed, it is equally and completely plausible that the entire fence was "clear" and that any portion of it could have been posted with the Petition.

In the midst of all this uncertainty, Muhammad's testimony was legally insufficient to prove that the Property was posted on its "most public part." 53 P.S. §7193.2(a)(1). On the basis of this record, the trial court's finding to the contrary was based on speculation and conjecture. In fact, the trial court would have to pile inferences upon an unsustainable inference to reach such a finding (*i.e.*, that the Property's fence was covered in debris; Muhammad actually posted the Property on the "clearest portion" of its fence; and that the "clearest portion" of the fence, through sheer happenstance, was also the "must public part" of the Property). Under Pennsylvania law, this evidence and process of deduction is legally inadequate to support a finding. *See Commonwealth v. Yobbagy*, 188 A.2d 750 (Pa. 1963) ("An inference upon an inference or suspicion and conjecture do not take the place of proof.").[7] Therefore, Trustee was obligated to adduce some other evidence to sustain the trial court's finding that the Property was posted properly.

### Affidavit

The only other evidence in the record is Muhammad's affidavit of service. We note that in construing the Real Estate Tax Sale Law, this Court has held

___

[7] *See also Frey v. Unemployment Compensation Board of Review*, 589 A.2d 300, 304 (Pa. Cmwlth. 1991) (*en banc*); *Commonwealth v. Borrin*, 12 A.3d 466, 47 (Pa. Super. 2011) (*en banc*), *aff'd*, 80 A.3d 1219 (Pa. 2013) ("Where the evidence of record equally supports two inconsistent inferences, it proves neither.").

15

that when a **public officer** files an affidavit of posting, an **evidentiary presumption** arises that the notice was posted properly. *See, e.g., Picknick v. Washington County Tax Claim Bureau*, 936 A.2d 1209 (Pa. Cmwlth. 2007).

In *Picknick*, the taxpayer argued that the Washington County Tax Claim Bureau failed to establish with substantial evidence that the postings on the property were capable of being viewed by the public at large. We disagreed, concluding that the tax assessor's affidavit of posting "gave rise to presumption of regularity" sufficient to demonstrate that the property was properly posted. *Id.* at 1213. Because the taxpayer failed to adduce any evidence, the presumption remained in effect.

In recounting the origins of this presumption rule, this Court in *Picknick* discussed *Thomas v. Montgomery County Tax Claim Bureau*, 553 A.2d 1044, 1046 (Pa. Cmwlth. 1989) (holding that "the evidence of the affidavit gave rise to a presumption of posting"), which, in turn, rested upon our Supreme Court's decision in *Hughes v. Chaplin*, 132 A.2d 200 (Pa. 1957). We explained in *Picknick* that the Supreme Court in *Hughes* held that "a *prima facie* presumption of the regularity of the acts of public officers exists until the contrary appears. Such a presumption is a procedural expedient. In tax sales it is particularly suitable." *Picknick*, 936 A.2d at 1213 (citations and quotations omitted.) Tracing back even further, the Supreme Court in *Hughs* cited *Beacon v. Robison*, 43 A.2d 640 (Pa. Super. 1945), to support the presumption rule. In *Beacon*, the Superior Court articulated the reason for the presumption as follows:

> It is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by the law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.

16

*Id.* at 643.

As *Picknick* and the history of the case law demonstrate, the evidentiary presumption with respect to an affidavit derives from a judicially-created, public-policy pronouncement that public officials are presumed to follow the law when performing public acts. Here, however, there is nothing in the record to establish that Muhammad was a public officer, such as a sheriff or a tax assessor/collector. Instead, the record indicates that Muhammad was a private process server acting on behalf of Trustee, a private corporation. (*See* R.R. at 23a, 78a.)

Because a public official did not post the Petition on the Property, the basis for the presumption is not present in this case and the reasoning used to support the presumption rule does not apply. As one court observed, "Where stops the reason, there stops the rule." *Aetna Life & Casualty Co. v. Barthelemy*, 33 F.3d 189, 193 (3d Cir. 1994). Accordingly, the presumption of regularity is inapplicable. *See Braxton v. United States*, 817 F.2d 238, 240-41 (3d Cir. 1987) (discussing how a presumption of regularity attached to service by federal marshals and how this presumption was removed when private parties began effectuating service); *James v. State*, 17 S.W. 422, 423 (Tex. Ct. App. 1886) ("[T]he presumption which obtains, that a clerk will do, and has done his official duty, cannot be extended to a private person"). Consequently, Muhammad's affidavit, which was admitted without objection, can at most be evidence of that which it says on its face.

On the affidavit, Muhammed checked the box for "Property Posted" and wrote "9-3-13 11:34 am." (R.R. at 23a.) However, Muhammed did not write where on the Property the Petition was posted. Therefore, the statements on the affidavit do not prove (or, for that matter, do not have any tendency to prove) that the Petition was placed "on the most public part of the [P]roperty." 53 P.S. §7193.2(a)(1).

17

To be sure, it was imperative for Trustee to adduce evidence showing where the petition was posted on the Property so the trial court could conduct its own independent assessment of the Property and its surroundings to determine whether the posting was made on the most public part. *See Schaffer*, 974 A.2d at 512. *See also O'Brien v. Lackawanna County Tax Claim Bureau*, 889 A.2d 127, 129 (Pa. Cmwlth. 2005) (concluding that the particular placement of the notice on the property was not conspicuous to the public and failed to comply with the posting requirements of the Real Estate Tax Sale Law); *Ban v. Tax Claim Bureau of Washington County*, 698 A.2d 1386, 1388 (Pa. Cmwlth. 1997) (same); *In re Upset Price Tax Sale of September 10, 1990*, 606 A.2d 1255, 1258 (Pa. Cmwlth. 1992) (same). Trustee has failed to offer substantial evidence and sufficient proof that it complied with the notice requirements of section 39.2(a)(1) of the MCTLA. Again, this section requires that a Petition be posted on a property's "must public part," and Muhammad's testimony and affidavit are legally insufficient to sustain a finding that this requirement was met. *See Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 844 (Pa. Cmwlth. 1987) ("The question of the legal sufficiency of the evidence is one of law. Thus, if the burdened party has failed to present sufficient evidence, he has failed to meet his burden as a matter of law [and] cannot prevail."). Therefore, the trial court erred in concluding that Cascone did not have standing to file his petition to set aside the sheriff's sale under section 39.2(b).

18

### B.  Cascone's title to the Property

Next, Cascone contends that he has common law standing, that is, he was "aggrieved," because he obtained title to the Property and recorded the deed after the Property was sold at the sheriff's sale.

However, standing is expressly defined and limited by sections 39.2(a) and (b) of the MCTLA, *see Petty v. Hospital Service Association of Northeastern Pennsylvania*, 23 A.3d 1004, 1008 (Pa. 2011) ("[S]tanding . . . is governed by the statute itself"), which set forth the only notice requirements "before a court may enter a decree ordering a tax sale." 53 P.S. §7193.2(b). The record establishes that Cascone did not register his interest or record the deed **before** the trial court ordered the sheriff's sale, and Cascone does not point to any provision of the MCTLA that entitles him to notice based upon a property interest that was unregistered and unrecorded at said time. *See id.* ("No party whose interest did not appear on a title search, title insurance policy or tax information certificate or who failed to accurately register his interest and address . . . shall have standing to complain of improper notice. . . . Notwithstanding . . . any other law to the contrary, the notice required by subsection (a) of this section shall constitute the only notice required before a court may enter a decree ordering a tax sale.").

Therefore, because the MCTLA governs notice and standing – and not common law principles – Cascone's argument lacks merit. In any event, we concluded above that Cascone was not deprived of standing to maintain his action to set aside the judicial sale, and the resolution of this issue does not affect our ultimate outcome.

## C. The effect of the *lis pendens* on standing

Finally, Cascone argues that the trial court erred in concluding that he lacked standing based upon the improperly docketed *lis pendens*. Although Cascone raised this issue before the trial court and arguably included in it his Pa.R.A.P. 1925(b) statement, he does not develop the issue in his appellate brief in a meaningful fashion and fails to cite any authority to support his contention; accordingly, this argument is waived. *Browne v. Commonwealth*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").[8] Nonetheless, this Court notes that, having already concluded that Cascone was not deprived of standing to maintain his action to set aside the judicial sale, we need not address this issue as a disposition matter.[9]

## Conclusion

In sum, our conclusion that the Property was not properly posted does not concern or impugn the trial court's credibility or weight determinations; instead,

---

[8] The entirety of Cascone's substantive argument is as follows: "[Trustee] argued that Cascone did not have standing due to this improperly docketed *lis pendens*. Following the October 28 hearing, counsel for Cascone contacted the Office of Prothonotary to determine the reason why the *lis pendens* appeared to be docketed incorrectly. The Prothonotary immediately corrected the error and recorded the error. Cascone then sought reconsideration of the lower court's [order] which was also denied." (Cascone's brief at 15-16.)

In any event, we note that our Supreme Court has held that "[i]t is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed," *Commonwealth v. Roberts*, 141 A.2d 393, 400 (Pa. 1958), and Giglio testified that the docket in Cascone's quiet title action did not have a line of information stating that a *lis pendens* had been filed when Trustee was ascertaining the persons entitled to notice. (Trial court op. at 3.)

[9] This does not mean that the trial court cannot consider the history surrounding the *lis pendens* and Cascone's title to the Property via the quiet title action as equitable factors when ruling on the petition to set aside.

it is an evaluation of the legal sufficiency of the evidence. *See Kirkwood*, 525 A.2d at 844. In reaching our conclusion, while the testimony of Cascone's witnesses indicated that they never saw any sign posted on the Property, in this case we need look no further than the evidence presented by Trustee. Viewing the evidence that Trustee presented at the hearing, namely Muhammad's testimony and affidavit, in the light most favorable to Trustee, and giving it benefit of all *reasonable* inferences, we conclude that it is legally inadequate to support a finding that the Petition was posted on the Property's "most public part" in accordance with section 39.2(a)(1) of the MCTLA. At most, the testimony and statements in the affidavit create a realm of speculation and conjecture as to where the Petition was posted on the Property. Indeed, the possibilities are endless, and the only sustainable inference is that the Petition could have been posted anywhere on the Property's fence, which does not prove that it was posted on the Property's "most public part." For this reason, we conclude that the trial court erred in determining that Cascone lacked standing to file a petition to set aside a sheriff's sale.

Accordingly, we reverse the trial court's order and remand for further proceedings.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Cohn Jubelirer concurs in result only.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

U.S. National Bank Association, : 
as Trustee, as successor in interest to : 
Wachovia Bank, N.A. as trustee for : 
the Bond Insurer and not in its : 
individual capacity, by and through its : 
servicing agent, Linebarger Goggan : 
Blair and Sampson, LLP : 
                                       : No. 2237 C.D. 2014
                v. : 
                                         : 
United Hands Community Land Trust, : 
A Pa Non-Profit Corporation, : 
Delaware Valley Community : 
Reinvestment Fund and Commonwealth : 
of Pennsylvania Bureau of Compliance/ : 
Clearance Support : 
                                         : 
Appeal of: Wesley Cascone : 

## ***ORDER***

AND NOW, this 15th day of December, 2015, the October 29, 2014 order of the Court of Common Pleas of Philadelphia County (trial court) is reversed. The case is remanded to the trial court for further proceedings in accordance with this opinion.

        Jurisdiction relinquished.

 

_____
PATRICIA A. McCULLOUGH, Judge