# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia, :
:
v. : No. 801 C.D. 2017
: Argued: March 14, 2019
:
Betty Denkins and :
Hong S. Ngo :
:
Appeal of: Betty Denkins :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  April 4, 2019**

Betty Denkins (Appellant) appeals from an Order of the Court of Common Pleas of Philadelphia County (trial court), denying her Motion to Set Aside Sheriff Sale (Motion to Set Aside).  Appellant and her late husband owned real property located at 5300-14 Woodland Avenue, Philadelphia, (the Property) which was sold for unpaid taxes at sheriff sale on January 19, 2016.  On appeal, Appellant alleges the Property was not properly posted in accordance with Section 39.2 of the act commonly known as the Municipal Claims and Tax Liens Act (MCTLA)[1] and that

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7193.2.  Section 39.2 was added by Section 4 of the Act of December 14, 1992, P.L. 859.

equitable circumstances exist that warrant setting aside the sale. Upon review, we affirm.

## I.     Background

On May 12, 2015, the City of Philadelphia (City) filed a petition for a rule to show cause (Petition) as to why the Property should not be sold at sheriff's sale for unpaid taxes. The trial court subsequently issued a rule to show cause (Rule) why it should not grant the relief requested. According to an affidavit of service that was filed, the City served Appellant with the Petition and Rule via first class and certified mail return receipt requested. An affidavit was also filed indicating the "[m]ost public part of [the P]roperty" was posted on July 22, 2015, at 11:31 a.m. (Reproduced Record (R.R.) at 27a.) When no response was received, the trial court issued a decree authorizing sale of the Property. The Property was sold to Hong S. Ngo (Purchaser) on January 22, 2016, for $89,000.

Following the sale, Appellant filed the Motion to Set Aside, asserting the Property was not posted and that she never had proper notice of the sale. Purchaser filed a petition to intervene, which was granted. The City and Purchaser filed responses to the Motion to Set Aside, denying that notice was improper. After several continuances, a hearing was held on October 25, 2016. At the hearing, three witnesses testified – Maxie Brown, the process server (Mr. Brown); Joshua Elliot, the tenant of the Property (Mr. Elliot); and Appellant.

Mr. Brown testified as follows. He posted the Property on July 22, 2015, at 11:31 a.m. Without looking at the affidavit of service, Mr. Brown thought the address was 5310 Woodland Avenue. The Property is fenced in with a six- or seven-foot tall fence with several automobiles on site and a single building toward

the back of the lot. There was no address or sign posted; Mr. Brown figured out the address based upon the addresses of nearby properties, one of which was a daycare across the street. He also testified that he used GPS. Several men were standing around when Mr. Brown arrived. He posted the notice by taping it to what he thought was a glass door towards the middle of the building. He considered the door to be the most public part of the property. Upon posting the notice, a man exited the building and asked what it was. Mr. Brown explained it was a sheriff notice, and the man advised "he would give it to his father who was the owner of the building." (Hr'g Tr. at 10, R.R. at 210a.) Mr. Brown described the man he spoke to as "a slender fellow, black, maybe five-foot eight." (*Id.*) The man took the notice off the door. Prior to the hearing, Mr. Brown went by the Property again to familiarize himself with the area.

Mr. Elliot testified as follows. Mr. Elliot operates an automobile mechanic garage and inspection station at the Property, which he rents from Appellant. The Property is fenced in, and the building sits at the back of the lot and has two garage bays and a blue door to the left that leads to the office. There is a sign with the name of Mr. Elliot's garage and address on it. Nearby are other auto mechanic shops and a daycare. Mr. Elliot received no notices and saw nothing posted on the Property. Besides Mr. Elliot, Mr. Elliot's son and another man work at the garage. Mr. Elliot testified his son is five foot, eight inches tall, with a beard and dreadlocks.

Appellant testified as follows. She owned the Property with her husband, who died in April 2016. Prior to his death, Appellant's husband handled the taxes. She received no notices and was hospitalized with a stroke for three to four weeks

3

and in rehabilitation for another two to three weeks.  In addition to the testimony, Appellant introduced five photographs purportedly depicting the Property.[2]

Following argument, the trial court took the matter under advisement.  On February 8, 2017, the trial court issued its order denying the Motion to Set Aside. Appellant sought reconsideration, which was denied.  This appeal followed.[3]

## II. Discussion

On appeal,[4] Appellant argues the City did not strictly comply with the MCTLA.  Specifically, Appellant argues there is insufficient evidence that the Property was posted.  She claims that the testimony of Mr. Brown suggests that he posted the wrong property.  She notes that Mr. Brown testified he posted the property at 5310 Woodland Avenue, not 5300-14.  She also notes that Mr. Brown testified that he posted the notice on a glass door, saw no sign, and the building was next to a daycare whereas Mr. Elliot testified there is a blue door, a sign with the address listed, and auto shops to the left, right, and across from his garage.  In order to determine the Property was posted, Appellant claims the Court would have "to pile inferences upon inferences," which is contrary to the law.  (Appellant's

---

[2] The original record only contains one photograph.  However, the hearing transcript reflects that five photographs were introduced and admitted.  (Hr'g Tr. at 52, R.R. at 220a.) Appellant included all of the photographs as part of the Reproduced Record.  (R.R. at 287a-91a.) The parties agree the photos should be part of the record.

[3] Appellant originally appealed to the Superior Court, which transferred this matter to this Court.

[4] Our review is limited to determining whether the trial court abused its discretion, rendered a decision unsupported by substantial evidence, or erred as a matter of law.  *City of Philadelphia v. Robinson*, 123 A.3d 791, 794 n.2 (Pa. Cmwlth. 2015).

4

Brief at 14.) In addition, Appellant argues there are equitable grounds to set aside the sheriff sale, as she was in poor health.[5]

The City responds that the trial court acted within its discretion when it credited Mr. Brown's testimony. It argues Appellant did not preserve the issue related to whether her health provided equitable grounds to set the sheriff sale aside. Purchaser likewise argues that notice was sufficient under the MCTLA, noting that Mr. Brown's testimony is consistent with his affidavit and is not necessarily in conflict with Mr. Elliot's testimony.

"The purpose of sheriff's sales under the [MCTLA] . . . is not to strip the owner of his or her property but to collect municipal claims." *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013). To ensure property owners are not stripped of their rights, Section 39.2(a)(1) of the MCTLA requires cities of the first class, such as the City, to serve notice on the owner "[b]y posting a true and correct copy of the petition and rule on the most public part of the property." 53 P.S. § 7193.2(a)(1). It is well settled that the taxing authority must strictly comply with the service requirements. *U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 633 (Pa. Cmwlth. 2015). In addition, it is the City's burden to show strict compliance. *Id.* Further, "a trial court must make 'an independent inquiry'

---

[5] Appellant also suggests that the City did not comply with the MCTLA's requirement of service by mail. Although she mentions this in a footnote in her brief, the remainder of her brief focuses on the adequacy of posting. While Appellant asserts in her Motion to Set Aside that the Property was never posted and that "she never had proper notice of the scheduled sale," she cites to Section 39.2(a)(1) of the MCTLA, which deals with posting, not Section 39.2(a)(2), which deals with service by mail. (Motion to Set Aside ¶ 6, R.R. at 53a.) Further, at the hearing, counsel for the City stated that "the only contested issue here is posting," to which Appellant did not object. (Hr'g Tr. at 56, R.R. at 221a.) Accordingly, to the extent Appellant is now asserting notice by mail was defective, this issue is waived. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 302(a); *In the Estate of Marra v. Tax Claim Bureau of Lackawanna Cty.*, 95 A.3d 951, 956 (Pa. Cmwlth. 2014).

to confirm that notice and service were effectuated in accordance with the MCTLA." *Id.* (quoting *Manu*, 76 A.3d at 605).

Here, following a hearing,[6] the trial court found the Property was properly posted. In doing so, the trial court found "credible the testimony of the process server [Mr. Brown] that he appropriately posted the most public part of the Property." (Rule 1925(a) Opinion (Op.) at 1.) In its Rule 1925(a) opinion, the trial court further explained that although Mr. Brown's testimony conflicted with Mr. Elliot's testimony at times, their testimony was consistent in several important regards, even though the witnesses were sequestered during the other's testimony.

Appellant argues the evidence here is insufficient under the case law to support a finding that the Property was posted on its most public part. In support, she cites this Court's decision in *U.S. National Bank*. In that case, one of the issues before the Court was the adequacy of the evidence of posting. The affidavit stated the date and time of posting but not where on the property the notice was posted. 129 A.3d at 633-34. The person who posted the property testified that he did "not exactly" recall where he posted the property. *Id.* at 634. On cross-examination, he further testified that he "can't say specifically" where he posted the property and that he "couldn't tell you the specifics." *Id.* Accordingly, we held there was no evidence to establish that the property was posted on its most public part. *Id.* at 635.

In contrast, here, Mr. Brown had specific recollection of posting the Property. He recalled walking by several men standing around, walking up to the

---

[6] Although it was the City, not Appellant, that bore the burden, *U.S. National Bank*, 129 A.3d at 633, the City did not present any evidence. Instead, Appellant called Mr. Brown to testify as to the posting.

6

door, and posting it. (Hr'g Tr. at 9-10, R.R. at 210a.) Mr. Brown also recalled speaking with a man who came out of the building and asked what the notice was about before telling Mr. Brown that he would give it to his father. (Hr'g Tr. at 10, R.R. at 210a.)

Appellant argues the trial court abused its discretion in finding the Property was properly posted. This argument appears to hinge on the perceived inconsistencies between Mr. Brown's testimony and Mr. Elliot's testimony. Appellant focuses on the fact that Mr. Brown testified there was no address or sign on the Property and there was a glass door, which was located towards the center of the building, whereas Mr. Elliot testified that there is a sign with the address listed on the Property and the door is blue metal, which is located towards the left of the building. Appellant also points out that Mr. Brown testified he posted 5310 Woodland Avenue, not 5300-14 Woodland Avenue, and Mr. Elliot denied ever seeing any notice posted.

However, the trial court focused on the consistency between the witnesses' testimony, especially considering they were sequestered during each other's testimony, and credited Mr. Brown's testimony.[7] (Rule 1925(a) Op. at 5.) As the trial court noted, Mr. Brown's description of the Property was confirmed by Mr. Elliot. (*Id.*) Both Mr. Brown and Mr. Elliot testified there is a single building located at the back of the lot, which is fenced in by a six- to seven-foot tall fence.

---

[7] The trial court appears to inadvertently confuse Mr. Brown's and Mr. Elliot's names in its summary near the end of its opinion. The trial court states it "found that Mr. Brown's testimony did not necessarily contradict Mr. Elliot. It is entirely possible that Mr. Elliot properly posted the Property and it was removed before Mr. Brown saw it. The [trial c]ourt did not abuse its discretion in believing Mr. Elliot's testimony, which was largely supported by Mr. Brown's testimony." (Rule 1925(a) Op. at 6.) It is apparent that the trial court meant to use Mr. Brown's name when it named Mr. Elliot and vice versa.

In addition, Mr. Elliot's description of his son who worked at the garage matched the description of the man with whom Mr. Brown claimed to have spoken and Mr. Elliot testified that he was at the Property with his son on July 22, 2015. Although Mr. Brown testified the man told him he would give the notice to his father who owned the Property, this is not entirely inconsistent with Mr. Elliot's testimony. While Mr. Elliot did not own the Property, he did own the mechanic shop that operated there. As for the discrepancy in the address, the record reveals Mr. Brown was going from memory. When asked if he "remember[ed] the address of th[e] property that [he] posted," Mr. Brown responded: "I think it was on the service; I believe it was 5310 Woodland Avenue." (Hr'g Tr. at 11, R.R. at 210a.) In context, it is clear that Mr. Brown knew the address was listed on his affidavit and sought to rely upon it, but without it to refresh his recollection, he stated he "believed it was 5310 Woodland Avenue." (*Id.*) Importantly, he subsequently asked to look at his affidavit. (*Id.*)

In finding Mr. Brown credible, the trial court, which had the opportunity to personally observe and hear the witnesses, also noted that Mr. Brown testified that he "was able to identify [the Property] because he knew the lot ran from 5300 to 5314 Woodland Avenue and he identified the addresses of the buildings next to the Property." (Rule 1925(a) Op. at 5.) In addition, the trial court found Mr. Brown's experience important. (*Id.*) Finally, it found Mr. Brown's and Mr. Elliot's testimony "did not necessarily contradict," noting that the Property could have been posted and the notice removed before Mr. Elliot saw it. (*Id.* at 6.) We note Mr. Brown testified the man he spoke with removed the notice from the door. (Hr'g Tr. at 22, R.R. at 213a.)

8

The trial court served as factfinder and, as such, was responsible for weighing the evidence and making credibility determinations. *Warwick Twp. Water & Sewer Auth. v. Warwick Realty Co., L.P.*, 176 A.3d 387, 394 (Pa. Cmwlth. 2017). Accordingly, we are "not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." *Id.* (internal quotation marks and citation omitted). Here, there is substantial evidence to support the trial court's findings. Moreover, we cannot conclude that the trial court abused its discretion in crediting Mr. Brown's testimony. The trial court also did not err in finding that Mr. Brown's credited testimony, coupled with the affidavit, established that the Property was properly posted.

Appellant next argues that equitable grounds exist to set aside the sheriff sale. The City argues Appellant did not raise this in her Motion to Set Aside, and as a result, the issue is waived. We agree. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure provides that issues not raised in the trial court are waived on appeal. Pa.R.A.P. 302(a). Our Supreme Court previously explained the importance of issue preservation:

> By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. *Lincoln Phila[.] Realty Assoc. v. Bd. o[f] Revision of Taxes of Phila[.]*, . . . 758 A.2d 1178, 1186 ([Pa.] 2000). This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible. *Wing v. . . . Unemployment Comp. Bd. of Review*, . . . 436 A.2d 179, 181 ([Pa.] 1981). Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. *See generally Dilliplaine v. Lehigh Valley Tr[.] Co.*, . . . 322 A.2d 114, 116–17 ([Pa.] 1974). Finally, concepts of fairness and expense to the parties are implicated as well. *Id.*

*In re F.C. III*, 2 A.3d 1201, 1211-12 (Pa. 2010).

Because Appellant did not raise any equitable grounds for setting aside the sheriff sale to the trial court, she is precluded from raising them on appeal.[8]

### III.  Conclusion

Because the credited evidence establishes that the Property was properly posted, the trial court did not err or abuse its discretion in refusing to set aside the sheriff sale.  Further, because Appellant did not assert equitable grounds for setting aside the sheriff sale before the trial court, she cannot do so now for the first time on appeal.  Accordingly, we affirm the trial court's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] Even if the issue was not waived, Appellant would not be entitled to equitable relief. She suggests her health rendered her incapable of overseeing her affairs.  Appellant did testify as to having suffered a stroke and being hospitalized for three to four weeks, followed by a stay in rehab for another two or three weeks.  However, Appellant did not testify as to when this occurred.  Moreover, she testified that her husband oversaw the handling of the Property.  He died in April 2016, but the City's Petition was filed in May 2015 and the sheriff sale occurred in January 2016, which was before his death.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,         :
                                  :
            v.               :    No. 801 C.D. 2017
                                  :

Betty Denkins and,      :
Hong S. Ngo           :
                                  :

Appeal of:  Betty Denkins  :

# **O R D E R**

**NOW**, April 4, 2019, the Order of Court of Common Pleas of Philadelphia County, in the above-captioned matter, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge
