**Francisco RADHAMES**

v.

**TAX REVIEW BOARD and The City of Philadelphia, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2010.

Decided April 22, 2010.

Kristin Kathryn Bray, Philadelphia, for appellants.

Franklin A. Bennett, III, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge, BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Tax Review Board (Board) and the City of Philadelphia (City) appeal three orders issued by the Court of Common Pleas of Philadelphia County that vacated two orders of the Board and vacated and remanded one other. We reverse the orders of the trial court and reinstate those of the Board.

The City's Department of Licenses and Inspection began inspecting the property located at 5966 Elsinore Street, Philadelphia, PA (Property). It was determined that there were multiple violations of the Philadelphia Code. The Department issued notices of violation to the then-owners of the Property, Robert and Frances Sommers (the Sommers). When the Sommers failed to make repairs on the Property within the stated time periods, the Department undertook the necessary abatement work to bring the Property in conformity with the Code. From 1998 through 2002, the City purportedly conducted significant abatement work on the Property. The alleged work included removing high weeds and rubbish, repairing and eventually replacing the roof, installing new windows and doors, demolishing and removing a collapsed rear bay, removing hazardous materials, and stuccoing and repairing the Property's walls. The City issued bills to the Sommers as work was completed.

The Sommers never made any payments towards the bill amounts. The City placed liens against the Property for unpaid costs associated with the abatement work. The Sommers never paid any money toward the liens.

In 2005, the Sommers sold the Property to Angelina Rodriguez and Ella Schuartsman. During their period of ownership, neither Ms. Rodriguez, nor Ms. Schuartsman paid any money toward the outstanding liens. In October of 2006, these individuals sold the Property to Radhames Francisco.[1] Prior to taking the Property, Mr. Radhames never conducted a title search in order to learn of the existence of seven municipal liens.

Mr. Radhames became aware of the City's liens in December of 2006. At that time, he filed several petitions for review with the Board appealing the bills/liens associated with Property. A hearing on Mr. Radhames' petitions was conducted by the Board on January 10, 2008. At the commencement of the hearing, the City acknowledged it improperly double billed one portion of the abatement. The improper bill noted "demolition" work was completed that was obviously in error as the Property was still standing. The City, without objection, requested that the Board grant Mr. Radhames' petition for review relating to that one matter. The City claimed the amounts due for the remaining liens, however.[2] The City then

1. The Appellee is referenced as both Radhames Francisco and Francisco Radhames in the record before us. The documents generated before the Board and certain trial court documents reference Appellee as Radhames Francisco in accordance with his initial filings. The trial court even noted in its opinion in support of its orders that many of the documents before that court erroneously referred to Radhames Francisco as Francisco Radhames but, nevertheless, it used the name Francisco Radhames in its final orders. That latter name was then used by the City in its Notices of Appeal of those orders to this Court and that name has been used in all the other appellate documentation in this Court. We shall continue to use the designation of Appellee as Francisco Radhames to maintain consistency with the previous documentation filed in this Court.

2.

| Account No. | Bill Date | Cost of Repairs | Total (with Interest and Admin. Costs) |
|---|---|---|---|
| 011626 | June 12, 1998 | $ 4871.09 | $ 9,407.44 |
| 200204 | March 3, 2000 | $ 4000.00 | $ 7,266.50 |
| 021262 | March 10, 2000 | $ 611.19 | $ 1,122.49 |
| 021253 | March 10, 2000 | $ 190.42 | $ 335.37 |
| 200393 | April 18, 2000 | $17,352.51 | $31,501.05 |
| 210220 | April 24,2002 | $17,392.51 | $30.205.65 |

objected to moving forward on Mr. Radhames' remaining petitions based on a lack of jurisdiction because the bills were untimely appealed. The City asserted that any *nunc pro tunc* relief should be denied as it has been prejudiced by the untimely filing of the appeals. According to the City, many records have been purged due to its records retention policy.[3] The City also objected that Mr. Radhames lacked standing because he was not the owner of the property when the abatement work was done or when the bills were issued. In addition, the City argued that under the Municipal Claims and Tax Liens Act (MCTLA), once a lien is entered, that constitutes prima facie evidence of its validity.[4]

The hearing proceeded without testimony. Counsel for Mr. Radhames asserted that the bills for the property in question were "utterly false to the point of them making an accusation that the building has been torn down." R.R. at 15a. Counsel contended that inasmuch as the City conceded the demolition bill was erroneous, the remaining bills were suspect as well. Counsel acknowledged his client did not have title insurance and did not have a lien search conducted. Counsel stated, however, that Claimant lived across the street for ten years prior to purchasing the Property and did not observe anything wrong with it. No testimony was taken.

The Board dismissed Mr. Radhames' six remaining petitions for review concluding it did not have jurisdiction to entertain them based on the untimeliness of the appeals. The Board found the City acted in accordance with its records retention policy when it disposed of many of the records it had on these matters. The Board further indicated that the lien process used by the City provided notice to any person who conducted a title search of the existence of the instant liens. It explained Mr. Radhames could have made an informed choice had he done a title search and perhaps struck a different deal with the seller.[5] Mr. Radhames appealed.

On March 31, 2009 the trial court entered orders denying Mr. Radhames' appeals on three bills; *i.e.*, the one for work done on June 12, 1998 and the two for

Reproduced Record (R.R.) at 11a.

3. Article VIII, Section 8–211 of the Philadelphia Home Rule Charter Provides:

Whenever any office, department, board or commission shall have an accumulation of records which are not *needful or useful* in the transaction of its current or *anticipated future work* and which date back a period of *more than four years*, it shall be the duty of the head of such office, department, board or commission to submit to the Administrative Board and the Department of Records a report of that fact, accompanied by a concise statement of the condition, quantity and character of such records. If the Administrative Board shall be of the opinion that such records or any part thereof are not *needed or useful* in the transaction of the current or *anticipated future work* of such office, department, board or commission, the Department of Records shall determine whether any of such records are of historical or archival value to the City, and shall take over for preservation in the archives of the City any records which have such value. The remainder shall be *turned over* to the Procurement Department which shall *dispose* of it in accordance with the rules promulgated by the Department of Records for the disposition of records. (Emphasis added).

4. Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101–7505.

5. A title search may reveal any liens that may affect a property. *See generally Fidelity Nat'l Title Ins. Co. of New York v. Suburban West Abstractors*, 852 A.2d 318 (Pa.Super.2004) (holding appellee was entitled to rely on accuracy of last owner search that should have revealed the existence of a judgment).

work done on March 10, 2000. The trial court granted Mr. Radhames' appeals regarding the assessments under Account 200393 for $31,501.05 and Account 0210220 for $30,205.65 and concluded that the Board erred in not vacating that assessment. These two liens were attributable to roof repair, stuccoing walls, and hazmat removal. The trial court also granted Mr. Radhames' appeal of Account 200204 for purported roof repair work done for $7,266.50. It remanded solely on this final matter for a full hearing so Mr. Radhames could present evidence as to his allegation that the roof repair work had not been performed.

In support of its rulings, the trial court determined that although the Philadelphia Code indicates a property owner must challenge an assessment within sixty days, *nunc pro tunc* relief was warranted in the instant matter. Preliminarily, the trial court indicated that neither Mr. Radhames, nor the previous owners, ever received notice of the assessments.[6] It indicated that this fact is bolstered by Mr. Radhames' contention that no work was ever performed.[7] The trial court further explained that *nunc pro tunc* relief can be granted when extraordinary circumstances

are present. It determined that those circumstances were present.

The trial court vacated the assessments numbered 200393 and 210220 without further hearing because "there is the issue of two bills for roof repair work done within twelve days of each other: February 28, 2000 for $7,266.50 and April 12, 2000 for $31,501.05."[8] R.R. at 139a. The trial court added that a charge of $31,501.05 for either a repair or replacement of a roof for a sixteen foot-wide row home where the Property is located is egregious and clearly erroneous.[9] It indicated the City should have conceded this bill at the time of hearing as such a sizeable charge was either the result of fraud or an administrative breakdown. Utilizing its "equitable powers," it vacated this assessment. The trial court then stated because the work done on April 24, 2002 purportedly occurred on the same day that the demolition was said to take place in the bill the City did concede, that tends to show that the assessment for hazmat removal, stucco, and roof work was also fraudulent or the product of an administrative breakdown. The City appeals.[10]

The City argues on appeal that the trial court erred in reversing the Board's deter-

6. There is no testimony in the record that Mr. Radhames, and more specifically, the Sommers, did not receive notice of the assessments.

7. No testimony was taken. The only portion of the record to the effect that Mr. Radhames did not believe any work was performed was a statement made by counsel.

8. It is noted that February 28, 2000 and April 12, 2000 are not twelve days from each other.

9. The trial court apparently did not differentiate between the cost of repair or replacement as distinguished from the total cost which included interest and administrative costs which are due to delayed payment of the original bill.

10. Our review is limited to a determination of whether the trial court abused its discretion, rendered a decision that lacks supporting evidence, or clearly erred as a matter of law. *Willard v. Delaware County Tax Claim Bureau*, 921 A.2d 1273, 1277 (Pa.Cmwlth.2007). The decision whether to grant an appeal *nunc pro tunc* is an equitable matter. *Darden v. Montgomery County Tax Claim Bureau*, 157 Pa. Cmwlth. 357, 629 A.2d 321 (1993). This Court must consider whether the trial court abused its discretion or committed an error of law in granting *nunc pro tunc* relief. *Western Pennsylvania Water Co. v. Board of Property Assessment Appeals and Review*, 63 Pa. Cmwlth. 472, 439 A.2d 1259 (1981).

minations that Mr. Radhames' petitions for review were untimely and, therefore, jurisdiction was lacking. Mr. Radhames does not dispute that ordinarily bills regarding abatement would have to be challenged within sixty days of receipt. He contends, however, that based on the circumstances presented, the trial court was within its authority to grant *nunc pro tunc* relief.[11]

Section 19–1702(1) of the Philadelphia Code provides:

> Every petition for review of any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Revenue, for or on behalf of the City or the School District of Philadelphia, including, but not limited to, any tax, water or sewer rent, license fee or other charge, and interest and penalties thereon, *shall* be filed with the Tax Review Board within 60 days after the mailing of a notice of such decision or determi-

nation to the petitioner. (Emphasis added).

■■■■ The failure to timely appeal an administrative agency action is a jurisdictional defect. *Falcon Oil Co., Inc. v. Department of Envtl. Res.*, 148 Pa.Cmwlth. 90, 609 A.2d 876 (1992). *See also Robinson v. Pennsylvania Board of Probation and Parole*, 525 Pa. 505, 582 A.2d 857 (1990) (holding tardy filings go to the jurisdiction of the tribunal to entertain a cause). The word "shall" by definition is mandatory, and it is generally applied as such. *Chanceford Aviation Props., LLP v. Chanceford Twp. Board of Supervisors*, 592 Pa. 100, 923 A.2d 1099 (2007). However, an extension of the period during which an appeal can be filed is justified where there is fraud or some breakdown in the tribunal's operations. *Clark v. Workmen's Compensation Appeal Board (Keystone Lawn Spray)*, 672 A.2d 348 (Pa.Cmwlth. 1995).[12] The delay in filing must result

---

**11.** The City asserts in its brief that Mr. Radhames argued to the trial court that it was required to resend him the bills for the repair work done when he took over as owner of the property. According to the City, Mr. Radhames never raised this argument to the Board and consequently, it contends this issue should be deemed waived. The trial court never discussed any argument regarding a requirement on the City to resend bills for repair work done to a property any time a new owner takes possession of the property. As indicated above, it granted Mr. Radhames *nunc pro tunc* relief allowing for a challenge to bills generated for repair work issued well before his petitions were filed. Moreover, Mr. Radhames does not raise this argument as a defense to the City's instant appeal. Consequently, we will not address it any further.

We also are cognizant that the City contends that Mr. Radhames' brief before the trial court was wholly deficient to notify the court of the issues raised and that the trial court inappropriately formulated his arguments for him. According to the City, "[t]his absolute failure of Appellee's brief should have resulted in the court finding that Appel-

lee waived all the issues he presented for review." Appellant's brief, p. 31. The City cites *George v. Ellis*, 911 A.2d 121 (Pa.Super.2006), as authority. That case holds that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal. We disagree in this instance. Mr. Radhames' brief to the trial court contains citation to the applicable provision of the Philadelphia Code, he requested *nunc pro tunc* relief, and set forth a basis as to why he believed he was entitled to *nunc pro tunc* relief. He further attached documentation from the City related to his petitions that stated "[t]he Tax Review Board may consider accepting a late petition if the petitioner can clearly establish that the late filing was based on circumstances outside of his/her control. It is the responsibility of the petitioner to put forth any extraordinary evidence to explain the delay in filing the petition." R.R. at 37a.

**12.** *Nunc pro tunc* relief may also be granted when the tardiness of one's appeal is the result of non-negligent conduct. *See Tony Grande, Inc. v. Workmen's Compensation Appeal Board (Rodriguez)*, 71 Pa.Cmwlth.566, 455 A.2d 299 (1983) (allowing an appeal that

from the fraud or breakdown in operations. *Horn v. Board of Property Assessment,* 163 Pa.Cmwlth. 262, 641 A.2d 15 (1994). Where the jurisdiction of a tribunal has been lost due to the staleness of a filing, the attractiveness of an argument on the merits is of no moment because the tribunal is without the power to grant the requested relief. *Robinson,* 525 Pa. at 512, 582 A.2d at 860. Indeed, where an appeal is untimely filed, a court cannot grant appellant relief even if his argument is meritorious. *State Farm Mut. Auto. Ins. Co. v. Schultz,* 281 Pa.Super. 212, 421 A.2d 1224 (1980).

We believe the trial court abused its discretion in allowing Mr. Radhames *nunc pro tunc* relief and extending the time period to appeal the bills initially issued to the Sommers. Section 19–1702(1) of the Philadelphia Code provides that any assessment of liability made by the Department "shall" be appealed within sixty days. The term "shall" is mandatory. *Chanceford Aviation Props.* None of the bills in question were appealed within sixty days. There is no evidence of any extraordinary circumstances upon which the trial court relied to grant *nunc pro tunc* relief. Consequently, the Board properly concluded it was without jurisdiction to entertain Mr. Radhames' arguments. *Falcon Oil, Robinson.*

▮ The trial court found inherent "fraud" in the existence of bills totaling $31,501.05 and $30,205.65 for roof repair/replacement, hazmat removal, etc.[13] In proceeding without any evidence of the reasonableness of the bills, relying only on the dates and total amounts of the bills,

the nature of the work described therein, the unsworn assertions of counsel, it concluded that the bills were either fraudulent or the result of an administrative breakdown. The trial court outright vacated these bills based on its "equitable powers." The ability to grant *nunc pro tunc* relief has its roots in equity. *Darden.* Time can be expanded to file an appeal, however, only when the *delay in filing* is the result of fraud or a breakdown in administrative operations. *Clark; Horn.* There was no testimony and no substantial evidence of fraud or administrative breakdown apparent in the bills presented by the City. Even assuming, *arguendo,* that the trial court was correct in concluding that there was some degree of fraud or breakdown in the administrative process in submitting and/or generating bills in excess of $30,000.00 for the repair/replacement of a roof, removal of hazmat material, etc., such alleged fraudulent conduct was not the cause of the late filing of an appeal in this case. Rather, bills were submitted to the Sommers whose failure to take action within sixty days consistent with Section 19–1702(1) of the Philadelphia Code was the cause of the *delay in filing,* not the conduct of the City. Regardless of any alleged impropriety by the City when the bills were issued and the assessments made, Mr. Radhames did not even become aware of these bills until four to eight years later in 2006.

The City further contends that the trial court erroneously made its own findings of fact. Pointedly, it takes exception to the fact that the trial court found Mr. Radhames lived across the street from the

---

was three days late due to counsel's unpredicted and unavoidable hospitalization); *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979) (allowing appeal where the secretary in charge of filing the appeal suddenly became ill resulting in a late filing).

**13.** We note that the trial court was evaluating the work performed to the total cost which included interest and administrative costs, rather than using the cost of the work performed.

Property prior to purchasing it and observed no work being done on Property as he never testified before the Board.[14] Further, it challenges the trial court's finding that the Sommers did not receive notice of the bills and that they were present at the hearing before the Board. Regardless, if the Sommers were present at the hearing, they did not testify. The City also questions the trial court's determination that because there were bills generated for work done on both February 28, 2000 and April 12, 2000, that is somehow proof of some fraud or administrative breakdown. Finally, the City argues that the trial court erroneously concluded, without any support in the record, that the work said to have been performed based on the information still available to the City could not cost the amount charged.

The record made before the Board does not support the findings made by the trial court. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Consolidation Coal Co.),* 531 Pa. 287, 612 A.2d 434 (1992). The trial court's findings, consistent with *Bethenergy Mines,* lack support in the record.

The City contends that Mr. Radhames does not have a remedy before the Board. Rather, it suggests Mr. Radhames needs to seek relief under the MCTLA. Mr. Radhames does not rebut this argument in his brief.

The MCTLA provides:

The words "municipal claim," as used in this act, unless specifically indicated otherwise, mean and include (1) the claim arising out of, or resulting from, a tax assessed, service supplied, *work done, or improvement authorized and undertaken, by a municipality,* although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for the grading, guttering, macadamizing, or otherwise improving, the cartways of any public highway; for grading, curbing, recurbing, paving, repaving, constructing, or repairing the footways thereof ... *or the removal of nuisances* ... A municipal claim shall be together with and shall include all penalties, interest, costs, fines, charges, expenses and fees, including reasonable

---

14. The City references the following dialogue from the hearing before the Board:

> Radhames' Counsel: [The Property] was conveyed to him from the previous owner to himself. It was his neighbor across the street. He lived across the street from this property for ten years prior to this whole transaction happening and saw nothing wrong with the property at all.
> The Chairman: So he took the property and whatever came with it?
> Radhames' Counsel: Correct, Mr. Chair.
> The Chairman: Whatever liens, whatever water bills, whatever?
> Radhames' Counsel: Correct.
> R.R. at 16a.

Based on this excerpt, the City contends Mr. Radhames is bound by Counsel's admissions that he took the Property subject to the municipal lien against it and that he cannot now claim a right to relief. A counsel's admissions and representations are binding on a client. *Sule v. Workmen's Compensation Appeal Board (Kraft, Inc.),* 121 Pa.Cmwlth.242, 550 A.2d 847 (1988). Despite *Sule,* however, Mr. Radhames may not lose his right to relief as cited by the City inasmuch as counsel was attempting to explain to the Board, nonetheless, that the bills were false and his client should still not be liable for any liens on the Property. He was prevented from doing so during the remainder of the hearing because the Board did not go further, but dismissed the case for lack of jurisdiction due to the untimely appeals.

attorney fees, as allowed by this act and all other applicable laws. (Emphasis added).

53 P.S. § 7101

The MCTLA further provides, in relevant part:

All municipal claims, municipal liens, taxes, tax claims and tax liens which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, *shall be and they are hereby declared to be a lien on said property,* together with all charges, expenses, and fees incurred in the collection of any delinquent account . . . (Emphasis added).

53 P.S. § 7106.

 The MCTLA permits a municipality to create a lien by filing a claim without a pre-filing hearing. *Winpenny v. Krotow,* 574 F.2d 176 (3rd Cir.1978). Under the MCTLA, the filing of a claim does not affect the alleged debtor's use of the property, and no interference with that use can take place until the municipality resorts to a judicial foreclosure. *Id.* The MCTLA is the exclusive means by which a property owner may challenge the form, substantive validity, or calculation of a tax lien. *City of Easton v. Lawler,* 862 A.2d 170 (Pa.Cmwlth.2004). After a municipal claim is filed, three procedural alternatives are available to the parties: (1) the owner may contest the municipal claim or the amount of assessment by filing and serving a notice on the claimant municipality to issue a writ of *scire facias,* thereby forcing a hearing on the municipal claim; (2) the

municipality may pursue a writ of *scire facias* without the owner's action; or (3) the owner and the municipality may choose not to do anything, thereby letting the municipal lien remain recorded indefinitely subject to revival of the lien every twenty years upon the issuance of a suggestion of nonpayment and an averment of default. *Penn Twp. v. Hanover Foods Corp.,* 847 A.2d 219 (Pa.Cmwlth.2004).

 A property owner that is aggrieved by a municipal lien that is not defective on its face may obtain an adjudication as to the validity of the lien by serving notice upon the claimant municipality to issue a writ of *scire facias* on the claim.[15] *Penn Twp.,* 847 A.2d at 222. A writ of *scire facias* to ascertain the amount due on a lien is ordinarily requested by a property owner to give him the opportunity to show why the lienholder should not be allowed to execute on his property. *Pentlong Corp. and Weitzel v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003). After the lienholder issues the writ, the owner may file an affidavit raising his defenses to the lien. *Shapiro v. Center Twp.,* 159 Pa.Cmwlth. 82, 632 A.2d 994 (1993). Proper defenses to the writ include actual payment of taxes, a defective claim or lien, fraud, or lack of process or notice. *Pentlong Corp.,* 573 Pa. at 45, 820 A.2d at 1247. In a *sci fa* proceeding, the trial court ultimately determines the appropriate amount of the lien, including any interest or costs. *Id.*

Mr. Radhames may still have recourse through the MCTLA. *City of Easton.* Should he choose to utilize the procedures available to him, he can present defenses to the liens remaining at issue including whether there has been a payment of the lien, *a defective claim or lien, fraud, or*

---

15. A petition to strike should be filed when the lien has defects appearing on its face.

*Penn Twp.,* 847 A.2d at 222.

*lack of process or notice. Pentlong Corp.* To this end, it must be noted that although Article VIII, Section 8–211 of the Philadelphia Home Rule Charter permits the disposal of records after four years, it does so only when those records are not "needful or useful" in current or "anticipated future" matters. It may be problematic that certain records were destroyed by the City when they may have proved needful or useful with unpaid balances remaining.

Based on our review, we reverse the instant orders of the trial court and reinstate the orders of the Board.

### *ORDER*

AND NOW, this 22nd day of April, 2010, the order of the Court of Common Pleas of Philadelphia County subject to this appeal are reversed. The orders of the Tax Review Board dismissing Francisco Radhames' petitions for review as untimely are reinstated.