IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of City of Philadelphia :
:
From Decision of: City of Philadelphia :
Tax Review Board (Office of : No. 878 C.D. 2023
Administrative Review), :
Calita Rogers-Moffit and Dennis Moffit : Submitted: December 9, 2024
:
Appeal of: City of Philadelphia :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: January 8, 2025

The City of Philadelphia (City) appeals from the July 10, 2023 order of the Court of Common Pleas of Philadelphia County (trial court), which denied the City's appeal from the September 22, 2022 decision of the City of Philadelphia Tax Review Board (Board). Therein, the Board abated all of the interest and administrative charges assessed with, and 50% of the principal of, costs incurred by the City in demolishing a dilapidated house on a property owned by Dennis Moffit and Calita Rogers-Moffit (Appellee) (together, the Moffits).[1] The trial court affirmed. Upon review, we reverse.

## I.   FACTS AND PROCEDURAL HISTORY

The material facts are not in dispute. Sometime in 2013, the City's Department of Licenses and Inspections (L&I) opened a case regarding the residential property located at 5434 Market Street in the City (Property), which it determined to

---

[1] Although the Moffits purchased the Property together, only Calita Rogers-Moffit appears to have participated in the proceedings below, and only she signed the petition for review filed with the Board. We accordingly refer to her herein as "Appellee."

be "imminently dangerous."[2] Approximately five years later, on April 11, 2018, L&I issued a "Final Notice of Violation and Order Imminently Dangerous Building" to the then-owners of the Property, McKinley and Louise Williams. In the notice, L&I advised that it had determined, after inspection, that the Property was "imminently dangerous, in whole or in part[]." (Reproduced Record (R.R.) 086.)[3] L&I directed the Williamses to either obtain necessary permits and make repairs or demolish the structure on the Property. If no action was taken, the City would perform the demolition and bill the owners for the associated costs. *Id.* L&I also posted on the outside of the front of the structure on the Property a large notice indicating that it was imminently dangerous and directing the owners to make the necessary repairs or demolish the structure. (R.R. 089.)

The Moffits purchased the Property "as is" at a sheriff's sale in May 2018. (R.R. 047, 079.) Prior to purchase, Dennis Moffit drove past and viewed the Property from the outside, but did not enter. (R.R. 048-49.) The Property was deeded to them on June 6, 2018. Both the deed and the real estate transfer tax documents listed the Moffits' address as 7701 Lindberg Boulevard, Apt. 704, Philadelphia, PA 19153. (R.R.

---

[2] "Imminent Danger" is defined in The Philadelphia Code as "[a] condition which could cause serious or life-threatening injury or death at any time." Phila. Code (Code), Phila., Pa., § 4-PM-202 (2024), *available at* https://codelibrary.amlegal.com/codes/philadelphia/latest/ Philadelphia pa/0-0-0-262986 (last visited January 2, 2025). When a structure is deemed to be imminently dangerous, the City is required to post the structure with a notice of its condition and notify the owners that repair or demolition is necessary. *Id.* §§ 4-PM-110.1.1-110.2. Where a property owner ignores the City's notices, the Code authorizes the City to conduct the necessary repair or demolition work and bill the owners for the associated costs. *Id.* §§ 4-PM-110.4, 110.6 (last visited January 7, 2025).

[3] The City's Reproduced Record does not comply with Pennsylvania Rule of Appellate Procedure 2173, which requires that reproduced records be paginated using Arabic numerals followed by a lowercase "a." Pa.R.A.P. 2173. Nevertheless, we utilize the City's form of pagination throughout this opinion.

2

100-03.) On August 16, 2018, L&I sent the Moffits a "Final Notice of Violation and Order Imminently Dangerous Building" at 7701 Lindberg Boulevard, Apt. 704, Philadelphia, Pennsylvania. (R.R. 110-11.) This notice, like the one issued to the Williamses, advised that the structure on the Property was deemed to be imminently dangerous based on an inspection conducted on April 11, 2018. L&I directed the Moffits to obtain permits and make necessary repairs or demolish the structure. If they did not, the City would perform the demolition and bill the Moffits for the associated costs. *Id.* The notice also listed the Property's various violations of the City's Property Maintenance Code.[4] *Id.*

On August 20, 2018, L&I sent similar notices to the Moffits at two addresses: (1) 4831 Tackawanna Street, Philadelphia, Pennsylvania, 19124, and (2) 7701 Lindberg Boulevard, Apt. **70** (instead of 704), Philadelphia, Pennsylvania. The Lindberg Boulevard notice was returned as undeliverable. (R.R. 108.) On September 11, 2018, L&I sent yet another imminent danger notice to the Moffits at 7701 Lindberg Boulevard, Apt. 704, based on an inspection conducted the same day. (R.R. 113.) Before the Board, Appellee alleged that the Moffits never received any of L&I's notices (together, Notices) because the Moffits moved after they got married and the Notices were not forwarded to their new address. (R.R. 069-70.)

On October 2, 2018, having received nothing in response to the Notices, L&I put out to bid the demolition work for the structure on the Property. After receiving several bids, L&I awarded the work to Pedro Palmer Construction, Inc., which was the lowest bidder at $22,700.00 (R.R. 124-26.) The demolition work was

---

[4] The City's Property Maintenance Code, also referred to as Subcode "PM," is located within Title 4 (The Philadelphia Building Construction and Occupancy Code) of the Code. *See* Code, §§ 4-PM-101.1-906 & ch. 10, *available at* https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-262986 (last visited January 7, 2025).

completed on November 23, 2018, and L&I issued bill #02-653878 (Bill) to the Moffits on December 13, 2018, which assessed $27,467.00 in demolition costs and administrative charges. (R.R. at 129-30.) Approximately 10 months later, on October 21, 2019, Appellee filed with the Board a petition for review of the Bill on a form titled "Petition for Tax Appeal," which is used for the filing of appeals to the Board "for the principal, interest, penalty, or refund" of City taxes. (R.R. 129.) Appellee stated the reason for the appeal as "never notif[ied] of [d]emolition or any notification[s] for this [P]roperty." (R.R. 129.)[5]

A Board-appointed Master conducted a public hearing on Appellee's petition for review on March 9, 2020, after which the Master abated 100% of the interest and 50% of the administrative charges included in the Bill. (O.R. at 148.) Appellee appealed to the Board, which scheduled a hearing at which Appellee failed to appear. Appellee requested rehearing, which the Board granted. The Board conducted a hearing on September 22, 2022, at which Appellee appeared *pro se*. Appellee testified on her own behalf, arguing chiefly that she should not be responsible for the demolition fee because the Property was simultaneously both listed for sheriff's

---

[5] Appellee's petition for review clearly was untimely filed. *See* Code § 19-1702(1) (all petitions for review relating to liability for any charge must be filed within 60 days of mailing of the notice of the charge). Ordinarily this would be a jurisdictional defect depriving a court of the ability to conduct appellate review of the agency's decision. *Radhames v. Tax Review Board*, 994 A.2d 1170, 1175 (Pa. Cmwlth. 2010). Indeed, on November 21, 2019, the Board returned the petition for review to Appellee as untimely filed. (Original Record (O.R.) at 152 (unpaginated).) The Board notified Appellee that it "may consider a late petition if [she] can clearly establish that the late filing was based on circumstances outside of [her] control." *Id.* The Board further advised Appellee that she must show extraordinary circumstances explaining her delay to justify the acceptance of the late filing. *Id.* On November 26, 2019, the Board advised Appellee that it was accepting the petition for review as timely filed *nunc pro tunc. Id.* at 151. The record does not contain Appellee's request for *nunc pro tunc* relief, and the Board's November 26, 2019 notice does not explain or summarize the extraordinary circumstances that caused the late filing. Nevertheless, the City has not challenged the Board's grant of *nunc pro tunc* relief.

4

sale and designated as imminently dangerous. She also again claimed to have not received any of L&I's Notices. L&I inspector Thomas Rybakowski testified on behalf of the City and recounted the City's efforts to both notify both the Williamses and Moffits of the condition of the Property and perform the necessary demolition work. After receiving the evidence, the Board issued an on-the-record decision in which it abated 100% of the administrative fees and interest and 50% of the principal Bill amount of $22,700.00.

The Board issued its written determination on October 4, 2022, followed by an opinion on February 27, 2023. Therein, the Board reasoned as follows:

> While the Board notes that [Appellee] purchased the [P]roperty at [s]heriff['s] [s]ale and was the owner at the time the [P]roperty was demolished, the Board finds it probative that the [P]roperty had been considered imminently dangerous for over 5 years and the City failed to proceed with a demolition or do anything to remediate the [P]roperty.

> The Board agrees that due to the limited time frame[,] [Appellee], the new owner, could not have improved the [P]roperty or done something to prevent this demolition from occurring. In the interest of fairness, the [ ] Board determination to reduce the principal to $11,[350] and 100% of the interest and administrative charge was appropriate.

(R.R. 040.)

The City appealed to the trial court, arguing that the Board's decision to abate 50% of the principal amount of the Bill in the interest of fairness was not authorized by the Code or supported by substantial evidence in the record. The trial court affirmed, concluding that "[a] cumulative common sense reading of all plainly recited relevant provisions of Code Chapter 19-1700 reflect that the [Board] has the authority to render a [p]etitioner wholly or partially liable for all proffered costs that had been billed to this [Appellee] by the City [ ] based upon [its] factual assessment of

5

the physical evidence and testimony." (Trial Ct. Op., at 14; R.R. 027.)  The trial court characterized the City's simultaneous designation of the Property as "imminently dangerous" and listing of the Property for sheriff's sale as "unconscionable conduct" that never should have occurred.  *Id.* at 14-15; R.R. 027-28.  It further concluded that L&I should have remediated the damages to the Property or demolished it long before the Moffits purchased it and that the Board would have been "justified to completely absolve the Moffits of any financial responsibility for this demolition."  *Id.* at 15; R.R. 028.  The trial court faulted the City for "admittedly imperfect service during this entire process," failing to present a "worksheet concerning salient data" on which the calculations in the Bill were based, and perpetuating "multiple elements of unfairness" on the Moffits after they purchased the Property.  *Id.* at 15-16; R.R. 028-29.  The trial court also distinguished this Court's precedential opinion in *City of Philadelphia v. Tax Review Board of the City of Philadelphia*, 929 A.2d 685, 688 (Pa. Cmwlth. 2007), and relied, in part, on this Court's unreported decision in *Kanofsky v. City of Philadelphia Tax Review Board* (Pa. Cmwlth., No. 1398 C.D. 2012, filed May 23, 2013).  *Id.* at 16-19; R.R. 029-32.  In sum, the trial court concluded that the Board's "allocation" of 50% of the demolition costs to the City was reasonable and a "sound exercise" of the Board's discretion.  *Id.* at 19; R.R. 032.

The City now appeals to this Court.

## II.    ISSUES

The City presents two issues for our review:  (1) whether the trial court erred in affirming the Board's abatement of 50% of the principal demolition cost of the Property, where the Board had no authority to do so under the Code; and (2) assuming the Board did have such authority, whether the trial court erred in affirming the Board's abatement of 50% of the principal demolition cost of the Property, where (a) the

6

Board's decision was not supported by substantial evidence, (b) the trial court engaged in its own fact-finding, and (c) the trial court made unwarranted and erroneous legal conclusions.[6]

## III.   DISCUSSION[7]

### A.   Principles of Law

The Board "is an administrative agency created by Sections 3-100(f) and 6-207 of the Philadelphia Home Rule Charter" (Charter). *City of Philadelphia*, 929 A.2d at 686 n.1 (quoting *All Purpose Vending, Inc. v. City of Philadelphia*, 561 A.2d 1309, 1311 n.7 (Pa. Cmwlth. 1989)). As such, the Board is a creature of the Charter and, thereby, the General Assembly,[8] and has only those powers expressly conferred

---

[6] Appellee's brief was due in this Court on or before January 16, 2024. Having not received her brief by that date, we entered an order on February 14, 2024, directing Appellee to file her brief within 14 days or be precluded from participating in briefing and oral argument. Appellee failed to comply with that order and, on June 6, 2024, we precluded her from participating in briefing and any oral argument that might be scheduled.

[7] When the trial court takes no additional evidence, our review is limited to determining whether the Board violated constitutional rights, erred as a matter of law, or made necessary findings of fact unsupported by substantial evidence in the record. 2 Pa.C.S. § 754(a); *Carson Concrete Corp. v. Tax Review Board*, 176 A.3d 439, 447 (Pa. Cmwlth. 2017). "Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion." *In re Collegium Foundation,* 991 A.2d 990, 992 n.6 (Pa. Cmwlth. 2010). In other words, "[s]ubstantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." *U.S. National Bank Association v. United Hands Community Land Trust,* 129 A.3d 627, 632 (Pa. Cmwlth. 2015). "[E]vidence proving 'suspicion and conjecture' does not constitute substantial evidence as a matter of law." *Id.*

[8] We have stated:

> The Pennsylvania Constitution, in expressly authorizing the General Assembly to create home rule municipalities, clearly states that a home rule municipality's ability to govern is limited by the Pennsylvania Constitution, its home rule charter, and the General Assembly. In accordance with well-established law, municipalities do not have free

**(Footnote continued on next page…)**

7

upon it in clear and unmistakable language. *Young v. Pennsylvania Board of Probation and Parole*, 189 A.3d 16, 22 (Pa. Cmwlth. 2018) (citing *Aetna Casualty and Surety Company v. Insurance Department*, 638 A.2d 194, 200 (Pa. 1994)).

In that vein, Section 19-1702(1) of the Code, which provides for the filing of "Petitions for Review" to the Board, provides as follows:

> Every petition for review of any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Revenue, for or on behalf of the City or the School District of Philadelphia, including, but not limited to, any tax, water or sewer rent, license fee or other charge, and interest and penalties thereon, shall be filed with the [ ] Board within 60 days after the mailing of a notice of such decision or determination to the petitioner.

Code § 19-1702(1). *See also id.* § 19-1702(5) ("The filing of a [p]etition for [r]eview shall be deemed to include therein, whether or not specifically stated, a request for the waiver of interest and penalties."). Thus, the Board has exclusive jurisdiction over disputes involving "any tax, water or sewer rent, license fee or other charge" resulting from "any decision or determination relating to the liability of any person for any unpaid money" collectible by the Philadelphia Department of Revenue for or on behalf of the City. *Id.*; *Cherry v. City of Philadelphia*, 692 A.2d 1082, 1084 (Pa. 1997) (the Board has exclusive jurisdiction over disputes concerning local tax liability in the City). The Code also authorizes the filing of petitions to the Board for refunds, compromises of claims, and waiver of interest and penalties. *See* Code, §§ 19-1703(1)(a)

---

reign over the sovereign which created them. Accordingly, the General Assembly retains express constitutional authority to limit the scope of any municipality's home rule governance.

*Krasner v. Henry*, 319 A.3d 56, 76 (Pa. Cmwlth. 2024) (citation, quotations, and editing omitted), *appeal filed*, (Pa., No. 49 EAP 2024).

8

(authorizing the Board to "grant a refund, in whole or in part," upon its determination that an amount charged by the City "has been paid under mistake of law or fact, or under an invalid law"); 19-1704(1) (authorizing the Board to consider petitions to compromise any claim for moneys collectible by the Department of Revenue); and 19-1705(1) (authorizing the Board to waive interest and penalties that have accrued against a person with unpaid claims collectible by the Department of Revenue).

## B. Analysis

The City argues here, as it did before the trial court, that the Board did not have any authority under the Code to abate the principal amount of demolition costs assessed in the Bill. Instead, the City contends that the Board had authority only to abate interest and administrative charges pursuant to Section 19-1705 of the Code, which it did. The City construes the Board's determination as an exercise of equitable powers that are not expressly granted anywhere in the Charter or Code. Accordingly, the City insists that the Board's decision is erroneous as a matter of law and must be reversed.

In *City of Philadelphia*, a City property owner with delinquent taxes, lien charges, interest, and administrative penalties filed a petition with the Board seeking abatement of only interest and administrative penalties. 929 A.2d at 686. After hearing, the Board abated all interest, penalties, *and lien charges* assessed for the delinquent tax years, concluding that the liens were within its jurisdiction as "other charges" assessed by the City. *Id.* (citing Code, § 19-1702(1)). The City appealed to the trial court, which affirmed. *Id.* at 687. The City further appealed to this Court, which reversed. We concluded that, although Section 19-1702(1) of the Code authorized the Board to determine the *liability* of any person for unpaid charges

9

assessed by the City and collectible by the Department of Revenue, the petition filed with the Board in that case was a petition seeking only abatement of interest and penalties under Section 19-1705 of the Code, which does not authorize abatement of principal. *Id.*

Then, in *Kanofsky*,[9] two City property owners appealed a bill issued to them by L&I for clean-up and sealing work performed on a property they inherited from their father. After hearing, the Board in *Kanofsky* upheld the imposition of the charges in the bill, but reduced the principal amount of the bill by 50% and abated entirely the interest, administrative charges, and liens. *Id.*, slip op. at 3-4. The property owners appealed to the trial court, arguing, in relevant part, that they did not receive notice of the underlying violations and that the bill was excessive given the small size of the property at issue. *Id.*, slip op. at 4-5. The trial court affirmed, and on further appeal to this Court, the property owners again argued, in pertinent part, that the City's notice of the underlying violations was inadequate and that the principal amount of the bill was not established by substantial evidence. *Id.*, slip op. at 5. We affirmed in part and vacated in part, concluding that the City's notice to the property owners of the underlying violations was sufficient, but also that the Board's decision to abate 50% of the principal was arbitrary and unsupported by substantial evidence. We reasoned:

> With regard to the Board's determination of the amount of the bill, we agree that the Board had the power to abate the interest and penalty provisions of the bill. The Code, however, does not provide the Board with the authority to settle on an amount that bears no relation to the actual evidence in the record. With regard to the principal, the Board appears to have endeavored to arrive at an amount that

---

[9] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). We also discuss *Kanofsky* because of the trial court's reliance on it in affirming the Board's decision.

it perceived to be *fair* for the work L&I's employees performed. Unfortunately, while we agree with the Board's characterization of the City's evidence as confusing and unclear, the method by which the Board arrived at its amount does not appear to be supported by the record. Rather, given the obvious ambiguities in the purportedly empirical evidence the City provided, the Board's decision to cut the principal cost in half was an arbitrary reaction based on the Board finding that the City's evidence was not credible or persuasive.

. . . .

[W]e cannot conclude that the Board's ultimate factual determination that the principal of the bill should be cut in half is supported by substantial evidence. The Board failed to make factual findings based upon substantial evidence from the record. A reasonable mind could not find that the City's testimony and bill itself support the original billed amount. Nor could the same evidence support a finding that half the amount of the original bill is correct. Half of a number that cannot be established by empirical evidence is not a factual finding that is supported by substantial evidence.

*Id.*, slip op. at 8-10 (footnotes omitted) (emphasis in original). We accordingly vacated the portion of the Board's decision regarding the amount of principal to be assessed to the property owners and remanded for factfinding by the Board regarding "the amount of the bill that is supported by the record evidence." *Id.*, slip op. at 10.

Here, although we agree with the City that Section 19-1705 itself does not authorize the Board to abate the principal amount of a bill, *see City of Philadelphia*, 929 A.2d at 688, we do not read Appellee's original petition as requesting merely the abatement of interest and penalties under Section 19-1705 of the Code, as was the case in *City of Philadelphia*. Rather, Appellee's petition, which was filed *pro se*, challenged the Bill in its entirety on the ground that the Notices were insufficient. (R.R. 129.) Appellee further argued before the Board that the Moffits should not be responsible for

11

any portion of the Bill because the Property, allegedly unbeknownst to the Moffits, simultaneously was listed for sheriff's sale and designated as imminently dangerous. (R.R. 046, 050.) Appellee therefore challenged the Moffits' *liability* for the entirety of the Bill, which liability falls squarely within the Board's jurisdiction pursuant to Section 19-1702(1) of the Code. Accordingly, to the extent that the City argues that the Board as a matter of law had no ability to consider the propriety or accuracy of the principal amount assessed in the Bill, we reject that argument.

However, the City also argues that the Board's abatement of the principal amount of the Bill by 50% is otherwise erroneous as a matter of law and unsupported by substantial evidence in the record. We are constrained to agree, in part.

The City is correct that neither the Charter nor Code grants to the Board equity powers. In other words, the Board is not free to conclude that a property owner is liable for a charge levied by the City and then direct payment of only a portion of it based on equitable considerations. To the extent that the Board concluded that it had such equitable powers under the Charter and Code and exercised them to reduce the amount of the principal amount of the Bill, it erred as a matter of law. This does not mean, of course, that the Board does not have the ability to determine and apportion *liability* for charges under Section 19-1702(1) of the Code, which power is expressly conferred by that section. This principle undergirded our decision in *Kanofsky*, where the property owners argued before the Board that the *amount* of principal was both incorrect and unreasonable. We concluded in *Kanofsky* that, although the Board was free to determine an appropriate amount of principal for which the property owners were liable, including an amount deemed by the Board to be "fair" under the circumstances, we also admonished that any such determination nevertheless had to be based on actual, record evidence. Because the Board did not cite such evidence or

12

make any associated findings of fact regarding the portions of principal for which the property owners were *liable*, we concluded in *Kanofsky* that the Board's decision, in particular its halving of the principal amount of the bill, was "arbitrary" and could not stand. *Kanofsky*, slip op. at 8-10.

Here, although the Board at times was generally critical of the procedures the City followed to accomplish the demolition of the structure on the Property, the Board nowhere *expressly* concluded that the demolition of the structure on the Property was unnecessary, that any of the underlying Code violations did not, in fact, occur,[10] that the Notices were legally insufficient, or that it was unlawful for the City to simultaneously list the Property for sheriff's sale and designate it as imminently dangerous.[11]  *See* R.R. 040.  Rather, the Board found "probative" that the City designated the Property to be imminently dangerous for approximately five years but

---

[10] Importantly, the Moffits did not appeal any of the violations cited by L&I in any of the Notices; nor did they seek to appeal any of the violations to the Board *nunc pro tunc* based on deficient notice.  Appellee further did not argue before the Board that the amounts included in the Bill, whether principal, interest, or administrative fees, were inaccurate or unreasonable.  Rather, Appellee argued solely that she should not be responsible for any of the demolition costs reflected in the Bill because (1) the Property should not have been listed for sheriff's sale while also designated as imminently dangerous, and (2) the Moffits did not receive the Notices at their new address.  Even if Appellee had argued that the principal amount of the Bill was inaccurate or unreasonable, she did not carry her burden of proof. *See Burleson v. Pennsylvania Public Utility Commission*, 461 A.2d 1234, 1236 (Pa. 1983) (a complainant alleging overbilling bears the burden to prove excessiveness of bill); *Milkie v. Pennsylvania Public Utility Commission*, 768 A.2d 1217, 1218 (Pa. Cmwlth. 2001) (complainant alleging overcharging bears the burden to show the bill was "abnormally high"); *Patton-Ferguson Joint Authority v. Hawbaker*, 322 A.2d 783, 786 (Pa. Cmwlth. 1974) (burden is on the complainant "to prove that the Authority had abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity").

[11] Mr. Rybakowski testified that it is commonplace for the City to list properties for sheriff's sale that have been designated as imminently dangerous.  (R.R. 067.)  Thereafter, it is the responsibility of the purchaser to remediate the Code violations. *Id.*  Mr. Rybakowski also testified that the structure on the Property, which was sold "as is," was visibly dilapidated from the outside and was posted on the front with a notice indicating that it had been determined to be imminently dangerous. *Id.* at 054-58.

13

did not take any action to pursue demolition or remediation until the Moffits purchased the Property. The Board further concluded that, after the Moffits purchased the Property, the City pursued demolition within a "limited time frame" that prevented the Moffits from preventing it. Accordingly, in "fairness," the Board reduced the principal amount of the Bill by 50%. The Board's decision appears to have been based on its dissatisfaction with the City's timeline for accomplishing demolition and remediation, which, although understandable, is not a valid ground to reduce the principal amount of the Bill. Because the Board did not apportion liability for the principal on any valid grounds and did not establish an appropriate amount of principal based on any record evidence, we are constrained to conclude, as we did in *Kanofsky*, that its decision was arbitrary and cannot stand.[12]

## IV. CONCLUSION

For the reasons set forth above, we reverse[13] the trial court's order affirming the Board's abatement of 50% of the principal amount of the Bill. We remand the case to the trial court for further remand to the Board with instructions to

---

[12] The trial court concluded that the City "waived" any argument challenging the arbitrariness of the Board's determination because the City did not introduce a "worksheet concerning salient data" showing the component parts of the demolition costs assessed in the Bill. (Trial Ct. Op., at 16; R.R. 029.) This was error. First, Appellee's petition for review did not challenge the reasonableness or accuracy of the demolition costs, which matters would have been Appellee's burden to prove. Second, the City presented the bid sheet and invoice from the winning bidder that performed the demolition work together with the amounts of interest and administrative charges that had accrued as of the date of the hearing. This evidence adequately supported the amount of principal. Only *after* the Board acted arbitrarily in reducing the amount of principal by 50% without legal or factual justification could the City have raised this argument. It was not waived.

[13] Because Appellee did not challenge the accuracy or reasonableness of the principal amount of the Bill or present any evidence on those issues, and because the Board did not determine that the Moffits were not liable for any portion of the Bill based on any grounds asserted by Appellee, we need not vacate the trial court's order and remand to the Board for any further proceedings.

14

reinstate the full principal amount of the Bill, or $22,700.00. The remainder of the Board's September 22, 2022 decision, having not been appealed,[14] remains in effect.[15]

_____

PATRICIA A. McCULLOUGH, Judge

---

[14] Section 19-1706(1) of the Code provides that decisions of the Board regarding waiver of interest or penalties "shall be final and conclusive and shall not be the subject of further review by any court." Code, § 19-1706(1).

[15] Both the Board and trial court relied almost exclusively on what they deemed the general inequity of the circumstances here, namely, that the Moffits purchased the Property at sheriff's sale for $10,000.00, were notified that the structure on the Property had been "imminently dangerous" for approximately five years, and were assessed the full cost of demolition. However, Appellee testified before the Board that the Moffits quickly found a purchaser for the Property, who, as the Moffits had done, intended to purchase it "as-is." (R.R. 050-51.) Given that the structure on the Property undisputedly was beyond repair, the marketability and value of the Property in fact may have increased dramatically now that the ongoing Code violations and safety hazards have been abated.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of City of Philadelphia   :
:
From Decision of: City of Philadelphia  :
Tax Review Board (Office of        :   No. 878 C.D. 2023
Administrative Review),         :
Calita Rogers-Moffit and Dennis Moffit :
:
Appeal of: City of Philadelphia     :

## **ORDER**

AND NOW, this 8th day of January, 2025, the July 10, 2023 order of the Court of Common Pleas of Philadelphia County (trial court) is REVERSED, and this matter is remanded to the trial court with instructions to remand to the City of Philadelphia Tax Review Board to reinstate the full amount ($22,700.00) of the bill issued to Calita Rogers-Moffit and Dennis Moffit on December 13, 2018.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge